UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21313-CV-SEITZ

**03-20272-CR-SEITZ**

JUAN C. ELSO,

        Movant,

v.

UNITED STATES OF AMERICA,

        Respondent.

_____/

## ORDER AFFIRMING AND ADOPTING, IN PART, REPORT AND RECOMMENDATION AND GRANTING A LIMITED CERTIFICATE OF APPEALABILITY

Before the Court are Movant's objections [DE 56] to the Report and Recommendation

(R&R) [DE 49] of The Honorable Patrick A. White. The R&R recommends the denial of

Defendant's *pro se* Motion to Vacate his conviction and sentence in Criminal Case No. 03-20272

[DE 1] pursuant to 28 U.S.C. § 2255, as twice amended. [DE 13 & 21].

The Court has reviewed the 142-page R&R which addresses 26 separate claims grouped

under six general categories,[1] the Movant's Objections, the Government's Response to the

Objections, which attaches a chart of Movant's 48 claims [DE 58], the Movant's Reply [DE 61],

---

[1] The six categories are: (1) Lack of subject matter jurisdiction as to Count 4; (2) Ineffective assistance of trial counsel Melvin Black and Marlene Montaner with eight sub-categories; (3) Ineffective assistance of appellate counsel Bruce Rogow with six sub-categories; (4) Due process violations with nine sub-categories; (5) Unlawfulness of convictions as to Counts 1 and 4 due to *Cuellar v. United States*, 553 U.S. 550 (2008); and (6) Ineffectiveness of appellate counsel in failing to request a stay of mandate. The first four categories were raised in the initial motion and the last two in the first and second amendments to the original motion, respectively. Claims 1, 5 and 6 are single issue claims while Claims 2, 3, and 4 have sub-claims with some of those having subparts.

1

the relevant pre-trial and trial transcripts in the underlying criminal case [DE 48], as well as the motion, its amendments, the Government's 149-page response to Movant's initial and amended motions [DE 30] and Movant's 91-page reply thereto [DE 35]. Based upon a *de novo* review, the Court overrules Movant's objections, denies the Motion to Vacate, and adopts, affirms, and ratifies the R&R. The Court declines to adopt the justification for the denial of the evidentiary hearing of Claim 2(iii) but does adopt the resolution of the claim.

Because of the volume of paper filed in this matter and the number of the Movant's objections, it is important to focus on the six claims rather than each objection[2] to avoid

---

[2]By the undersigned's count, Movant has noted 114 objections. It is necessary to address Movant's first objection which is to Magistrate Judge White's denial of Movant's motion to recuse [DE 7]. Movant maintains Magistrate Judge White should have recused because in another case, Case No.02-cv-22921-JLK, filed by Movant's former client, Nelson Acosta, the Government noted in a footnote in its July 22, 2003 answer to Acosta's §2255 motion that Judge White may have had some involvement in the investigation of Movant's criminal case. *See* Case No. 02-22921-CIV, (DE 16 at fn. 1).

Judge White, a former Assistant United States Attorney, became a judge several months before the Acosta answer was filed. The footnote states Judge White was not involved in the Acosta case, but "*may* have had some involvement in the J.C. Elso investigation."(emphasis added). *See* Case No. 12-22921-CIV (DE 62). Movant had been Mr. Acosta's criminal defense counsel and one of the §2255 issues was whether Movant was under an actual conflict of interest because he simultaneously represented Mr. Acosta and Mr. Rudy Diaz (a defendant in Movant's case), in 1997 and 1998 and these defendants had conflicting interests.

The Movant's habeas case was assigned to Judge White on May 22, 2007. Four months later, on September 25, 2007, after Judge White recommended that the Movant's motion be dismissed without prejudice because of his pending appeals, Movant moved to recuse. Judge White denied the motion because the Movant failed to allege facts to justify recusal. Judge White stated he had no recollection of being involved in the Movant's investigation and without facts to lay the requisite predicate of actual bias, the motion must be denied. [DE 9].

Recusal is appropriate when a judge has a personal bias or prejudice against a party, personal knowledge of disputed evidentiary facts concerning the proceedings or in his governmental service participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy. 28 U.S.C. §455(b). Movant did not meet this standard to recuse Judge White even though he cites to his successful recusal of Magistrate Judge Goodman. First, his motion was untimely. Second, adverse legal rulings are not grounds for recusal. Third, Judge White's statement that he

obscuring the crux of Movant's motion. The claims are often variations on certain themes and evolve in the papers. The crux of the motion is that there is no evidentiary or legal foundation to support the verdicts that found Movant, a criminal defense attorney, and his client, Andy Diaz, engaged in money laundering on November 15, 2001 by concealing or disguising drug proceeds (Count 4 – a §1956(a)(1)(B)(i) and §2 violation); or that Movant, Andy Diaz and Wlberth Gaviria conspired to engage in money laundering from May, 2001 through February 6, 2002 (Count 1 – a §1956(a)(1)(B)(i) & (h) violation); or that the Movant, Heiner Gaviria and others conspired to engage in laundering drug proceeds to avoid a transaction reporting requirement between July 1999 and September 19, 2002 (Count 2 – a §1956(a)(1)(B)(ii) & (h) violation).

## FACTUAL OBJECTIONS

As to the R&R's summary of the facts [DE 49 at 12-30], Movant correctly recognizes that his objections are "not quite material to these proceedings." [DE 56 at 4]. Nevertheless, he objects to the factual summary saying it "simply relied on the government's version and recitation of the facts" in its answer brief in Appeal No. 04-13043 rather than conducting an independent review. Having reviewed the relevant transcripts [DE 48][3] and correcting the

---

has no recollection of involvement in the Movant's criminal case renders the footnote, the single basis for the motion, at best a speculative comment rather than a fact on which a reasonable person, who is knowledgeable about the legal process and familiar with the relevant facts, can justify recusal which would unnecessarily delay resolution of a case. Therefore, this objection is overruled. In addition, Chief Judge Federico Moreno also denied Movant's motions to recuse the undersigned. [DE 46 & 69].

[3]Docket Entry 48 contains as exhibits, 27 transcripts of court proceedings in Case No. 03-20272-CR-SEITZ. The exhibit numbers, with dates of proceedings and cites to corresponding criminal case docket (CR) and the appellate record (AR), are: Pre-trial proceedings: **#1**: July 24, 2003 (CR 81; AR 7); **#2**: August 5, 2003 (CR 87; AR 8); **#3**: October 24, 2003(CR 262; AR 9); **#4**: November 13, 2003 (CR 263; AR 10); and **#23**: December 1, 2003 (CR 295; AR 14). Trial proceedings of December 2 thru 22, 2003: **#5 & #6**: December 2 (CR 264; AR 15); **#7 & 8:**

typographical error on page 8 of the R&R to reflect the 121 months sentence the Movant received, the Court finds the "Facts Adduced at Trial" section of the R&R accurately summarizes the relevant trial evidence and therefore adopts this factual summary.

There are three factual claims which the Movant emphasizes. First, as to Count 4, Movant asserts the $266,800 in cash seized from his briefcase in his car trunk on November 15, 2001 belonged to him and he was merely "rescuing" bona fide legal fees for representing Rudy Diaz.[4] To support his factual inference, Movant relies on his motion (submitted under penalty of perjury), Andrew Diaz's stenographic statement before Attorney Rosenblatt filed in the state forfeiture proceedings and Andrew Diaz's trial testimony at [DE 48-9 at 150-151]. Movant's perspective is the factual foundation for his argument that there could be no financial transaction affecting interstate commerce.[5] However, Movant has overlooked Andrew Diaz's testimony, at

---

December 3 (CR 265; AR 16); **#9**: December 4 (CR 266; AR. 17); **#10**: December 5 (CR 267; AR 18); **#11**: December 8 (CR 268; AR 19); **#12**: December 11 (CR 269; AR 23); **#13 &14**: December 12 (CR 270; AR 24); **#15**: December 15 (CR 271; AR 25); **#16**: December 16 (CR 272; AR 25); **#17 &18**: December 17 (CR 273; AR 27); **#19**: December 18 (CR 274; AR 28); **#20**: December 19 (CR 275; AR 29); **#21**: December 9 (CR 287; AR 21); **#22**: December 10 (CR 288; AR 22); **#24**: December 22 (CR 276; AR 30). Sentencing transcripts are: **#25, 26 & 27** (CR 316; AR 31). The R&R's factual summary cites to the appellate record which are noted in handwriting on the upper right corner of the first page of the transcripts. Movant cites to the criminal case docket.

[4]The Eleventh Circuit did not accept Movant's position. In affirming the conviction, it held that even if the funds were attorney's fees, his §1956 conviction would stand because the overwhelming evidence showed he knew and intended that the transaction was designed to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified unlawful activity. *See United States v. Elso*, 422 F.3d 1305, 1310 (11th Cir. 2005).

[5]Movant also argues that his arrest was pre-textual and that the Government engaged in fundamentally unfair tactics in charging him, misleading the grand jury with hearsay and perjured testimony and otherwise inflaming the grand jury against him.

page 151, line 8-9, wherein he testified: "He [Elso] was trying to get the money back. It wasn't for attorney's fees, though." Also at page 152, line 3, Andrew Diaz testified: "That's correct." in response to the question: "You're claiming that you didn't owe him money after you paid him the $50,000, right?" Again, Andrew Diaz testified, on page 153 at line 7, to the effect that the Movant was making the claim for the $266,800, not because the cash was his legal fees, but "Because he wanted to get out of trouble."

Next, the evidence as to Count 2 included a 1999 money laundering incident involving $9,800 that was wired from Movant's trust account. Movant maintains his conviction on this count was based solely on the perjured testimony of Elizabeth Garcia, the common law spouse of drug dealer Heiner Gaviria. Movant claims that Ms. Garcia never testified that she advised movant or anyone at the law office that the $9,800 cash was drug proceeds citing to DE 227 in the criminal docket.[6] *See* [DE 1 at 41]. However, while Garcia testified she did not specifically use the words 'this is drug money' when she gave people in Movant's office cash to launder [DE 48-21 at 143:2-5], when she handed Movant the $10,000 cash bundled in rubber bands, she told him it was Heiner Gaviria's money and that Movant would receive a 2% commission for laundering. [DE 48-21 at 121:1-7; 146:14-16]. The testimony also was that Movant was aware both that Heiner was a drug trafficker and that all of Garcia's cash deliveries were drug proceeds.

Finally, Movant asserts that alleged exculpatory statements of Teresita Davila and Lucinda Smith, which the Government allegedly suppressed by not granting them immunity, confirmed that Movant was not involved in any money laundering scheme with Francisco Gato

---

[6] Docket Entry 227 in Movant's criminal case, Case No. 03-20272-CR-SEITZ, is a one-page document noting an excerpt of pages 1-62 of Elizabeth Garcia's trial testimony. Ms. Garcia's trial testimony can be found in this docket at [DE 48-21 at pp. 96-149].

or Heiner Gaviria much less in receiving, depositing or wiring of the $9,800. As to the exculpatory statements that Teresita Davila allegedly would have provided, Movant has not provided any affidavit from Ms. Davila as to such statements. Moreover, Ms. Davila's IRS interview reports indicate only one paragraph about the Movant in which she stated she did not recall a conversation with him about the Millennium investigation, she only recalled him asking if she had heard about Heiner's arrest and that one of Movant's clients, Frank Gato was testifying against Heiner. Thus, there is nothing in the record indicating that Ms. Davila ever denied that the Movant engaged in any particular activity. Case No. 03-20272-CR-SEITZ (DE 219:12-20). Moreover, prior to Movant's trial, Ms. Davila herself was indicted and she subsequently pled guilty to laundering drug proceeds. *See U.S. v. Davila*, Case No. 03-20909-CR-JORDAN (DE 109 & 137).

Turning to Lucinda Smith, who also worked in Movant's office, Movant alleges that Ms. Smith gave the Government statements which exculpated rather than incriminated him but that the Government reports "conspicuously omit these crucial, exculpatory statements." [DE 1 at 20]. Movant has not provided an affidavit from Ms. Smith so no exculpatory statements have been identified other than Movant's petition statement that she advised the Government on August 12, 2003 that "Elso had not recruited" her. However, that was not the relevant issue – the relevant issue was whether Movant participated in the money laundering. The undisputed testimony was that Movant signed the fax authorizing the wiring of the $9,800. Thus, based on the record before the Court, the factual summary accurately summarizes the relevant evidence in this case.

## *REQUESTS FOR EVIDENTIARY HEARING*

Through out his papers, Movant makes requests for evidentiary hearings. The standard for such a hearing on a §2255 petition is that an evidentiary hearing must be held on a motion to vacate "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). For the reasons that follow, the Court finds that Movant's claims either conclusively show that he is not entitled to relief or are contradicted by the record. Therefore, Movant is not entitled to an evidentiary hearing on any of his claims.

## *ANALYSIS*

In his motion and amended motions to vacate, Movant has raised numerous claims with multiple sub-claims. *See* [DE 1, 13 & 21]). In the R&R, Judge White organized Movant's claims into six logical categories based on the constitutional violation asserted.[7] As the Court reviews Movant's objections, it will follow the same organization.

To begin, the Court has reviewed all the pleadings in this matter. Movant, more often than not, cited and interpreted the law correctly. However, he generally applied the law to facts not supported by the record or used case law to support a general legal proposition which, without more, does little here to aid his cause. For the reasons that follow, the R&R is adopted, affirmed and ratified, as noted below.

### CLAIM 1: LACK OF SUBJECT MATTER JURISDICTION

In his first claim for relief, Movant argued that Count Four of the indictment charging

---

[7] While Judge White found that Movant's amended petitions were time-barred, he exercised judicial discretion and considered those claims on the merits. The Court agrees and does likewise here.

Movant with "knowingly and intentionally conduct[ing] a financial transaction, that is, the delivery or transfer of $266,800.00 in United States currency, which were the proceeds of a specified unlawful activity, that is, the distribution and sale of cocaine, in violation of Title 21, United States Code, Section 841(a)(1), knowing that said transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct said financial transaction, the defendants knew that the monetary instruments were the proceeds of some form of unlawful activity" was not cognizable in federal court. Movant argued that the Government failed to "allege the required jurisdictional, interstate commerce element" and it "failed to present any evidence to establish how interstate commerce was impacted after movant received the monies, placed them in a the trunk of his car and drove with them on a county road for 4 ½ minutes, at which time he was stopped and the monies subsequently seized." [DE 1 at 7]. On review of this claim, Judge White determined that because the Government tracked the language of the statute and set forth the essential elements of the crime in the indictment, the Court had subject matter jurisdiction. Judge White also found that if Movant was asserting that the Court lacked jurisdiction because the indictment failed to state a claim then this claim was procedurally barred because it was not raised on direct appeal and because it was not made on a timely basis before trial. Putting aside any procedural bars, Judge White ultimately determined that the claim failed on the merits because the indictment was sufficiently specific to inform Movant of the charges against him and enabled him to plead double jeopardy in any future prosecution for the same crime. *See* [DE 49 at 34].

Movant has filed numerous objections to almost all of Judge White's conclusions. [DE

8

56 at 6-20]. Among other things, Movant objected to Judge White's "cleverly attempt[] to separate the claim that Count 4 fails to state a federal offense from its jurisdictional underpinnings and [sic] by attempting to recharacterize the claim." [*Id.* at 10]. At issue, is Judge White's determination that Movant's claim argued two separate basis for relief: lack of subject matter jurisdiction and failure to state a claim. In his objections, Movant asserted that Judge White "attempts to recharacterize, separate and disassociate movant's 'lack of subject matter jurisdiction based on Count 4's failure to state an offense' claim into two separate and distinct claims, to be sure, movant's claim that the court lacked subject matter jurisdiction is predicated on the fact that Count 4, as noted above, failed to state a federal offense because it did not allege the jurisdictional element of the statute." [*Id.* at 8]. The Court has little doubt that Judge White reviewed this vague bare-boned claim considering two plausible interpretations of Movant's argument in an effort to afford Movant the benefit of the doubt. However, as Movant maintained that his claim was meant only to assert lack of subject matter jurisdiction on the sufficiency of the indictment and those two arguments should not have been considered separately, then the Court is inclined to analyze it as a single claim.[8]

Under 18 U.S.C. §3231, the federal district courts have subject matter jurisdiction over all offenses against the laws of the United States. *Alikhani v. United States*, 200 F.3d 732, 734–35 (11th Cir. 2000). Movant was plainly charged by the grand jury with a violation of Title 18, United States Code, Sections 1956 (a)(1)(B)(i) and (2). Movant contended that the Government

---

[8] This is not to say that the Court does not agree with Judge White's analysis but since Movant asserts that Judge White analyzed a claim that was not the claim he made and objects to Judge White's having reviewed his claim as two separate and distinct arguments, the Court finds it unnecessary to conduct an analysis of the entire R&R as to Claim I. To be clear, however, the Court does adopt and affirm Judge White's R&R as to this claim.

failed to allege the required jurisdictional, interstate commerce element in the indictment, therefore, the Court lacked subject matter jurisdiction. Movant argued that this is so because he believes that "18 U.S.C. §1956 (a)(1)(B)(i) requires the Government to expressly allege in the indictment. . . that the financial transaction alleged affected interstate or foreign commerce." Movant offered no support for this argument. He cannot do so because there is none.

To begin, this claim is a challenge to the sufficiency of the indictment. Movant has attempted to make a variation of this claim in one form or another for quite some time. Movant was foreclosed from bringing it as a Rule 12(b)(3)(B) motion and he failed to raise it on direct appeal. *See United States v. Elso*, 571 F.3d 1163 (11th Cir. 2009). Seemingly aware of this fact, Movant again attempted to raise this argument under a broader general claim of lack of subject matter jurisdiction. Matters of jurisdiction may be raised at any time; if a court lacks subject matter jurisdiction, it does not have power to hear case. *U.S.C.A. Const. Art. 3, § 2, cl. 1.*

However, "[i]n examining an indictment, courts no longer look for formal rigidity. 'As a general rule, practical, rather than technical, considerations govern the validity of an indictment. In addition, when 'the defendant challenges the indictment after the Government's case has ended, the indictment should be construed in a liberal manner in favor of validity.'" *United States v. Mesina*, 353 Fed. Appx. 416, 417 (11th Cir. 2009)(*citing United States v. Seher*, 562 F.3d 1344, 1356 (11th Cir.2009).

The Court has reviewed the indictment and finds Movant's argument to be without merit. Section 3231 of Title 18 of the United States Code is clear. The district courts of the United States shall have original jurisdiction of all offenses against the laws of the United States. Movant was charged with a violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i)

10

and (2). Sections 1956(a)(1)(B)(i) and (2) do not require that the indictment expressly allege "a nexus to interstate or foreign commerce." *See United States v. Burgos*, 254 F.3d 8, 11 (1st Cir. 2001); *United States v. Sabbeth*, 262 F.3d 207 (2nd Cir. 2001) and *United States v. Goodwin*, 141 F.3d 294 (2nd Cir. 1997). Movant seemed to assert that because the monies were only in his car for four and a half minutes on a county road then the Government failed to show that interstate commerce was impacted. This argument misses the mark. Even if this argument had merit, it does not change the sufficiency of the indictment; rather, this argument attacks the sufficiency of the evidence. Movant cannot raise that claim here.

The indictment clearly alleges that the $266,800.00 which Movant had in his possession at the time of his arrest and with which he did knowingly and intentionally conduct a financial transaction were the proceeds of a specified unlawful activity, that is, the distribution and sale of cocaine, in violation of Title 21, United States Code, Section 841(a)(1). This is the language direct from the statute.

Section 1956(a)(1)(B)(i) provides that:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity-

* * *

(B) knowing that the transaction is designed in whole or in part-

* * *

(ii) to avoid a transaction reporting requirement under State or Federal law

"Financial transaction" means the "movement of funds by wire or other means ... which in any way or degree affects interstate of foreign commerce." 18 U.S.C. § 1956(c)(4). Under a

11

practical interpretation of the indictment, Count 4 was plainly sufficient and provided a general description of the facts and predicate offenses. Implicit in the term "financial transaction" was an interstate commerce element. The indictment specifically referred to and tracked the language of the statute on which it was based, i.e. §1956(a)(1)(B)(i), and provided notice to Movant of the charges to be defended. This is all that is required. *See United States v. Wayerski*, 624 F.3d 1342 (11th Cir. 2010). The Court had subject matter jurisdiction. This claim is denied and the Court adopts the R&R.

### CLAIM 2: INEFFECTIVE ASSISTANCE OF COUNSEL

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth the two-prong test that a convicted defendant must meet to demonstrate that his or her counsel rendered ineffective assistance. First, a defendant "must show that counsel's representation fell below an objective standard of reasonableness" "under prevailing professional norms." *Strickland*, 466 U.S. at 688. Second, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Court defines a "reasonable probability" as one "sufficient to undermine confidence in the outcome." *Id*. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693.

Here, Movant argued his counsel was ineffective for eight reasons: 1) failing to investigate, challenge the indictment or file pre-trial motions; 2) failing to object under *Batson*; 3) failing to call witnesses and by failing to present readily available defenses and evidence; 4) failing to object to erroneous jury instructions, excessive security measures, and failing to request

12

the Court to voir dire the jurors; 5) failing to timely file post trial motions for judgment of acquittal; 6) drug use by counsel; 7) failing to object to judicial fact finding during sentencing hearing, failing to preserve right to challenge the constitutionality of federal sentencing; and 8) failing to request a role reduction or downward departure.

In the R&R, Judge White found all eight of these sub-claims to either be subject to summary dismissal due to a failure to adequately plead a basis for the claim or that the claims were without merit. Judge White also rejected Movant's request for an evidentiary hearing because "the claims raised are unsupported by the record or without merit." [DE 49 at 141-42].

### i. Failure to investigate, challenge the indictment, or file pre-trial motions.

Movant asserted multiple claims of deficient performance on behalf on his trial counsel. First, he asserted that his counsel was ineffective by failing to "challenge the Government's misconduct before the grand jury" and for failing "to move for the dismissal of Count 4" of the indictment. [DE 1 at 7]. Second, Movant argued that his counsel failed to render effective assistance of counsel when he did not file a motion to seek access to grand jury materials; a motion for bill of particulars; a motion to suppress post arrest statements and the statements of paid Government informant Francisco Gato; motion for specific *Brady* information; a motion for an evidentiary hearing pursuant to *Webb v. Texas*; a motion to preserve and/or for *in camera* inspection of FDC calls; a motion to challenge the use and reliability of the "money detecting" canine; and a motion to disqualify the undersigned. *See* [DE 1 at 8].

Judge White recommended these sub-claims be denied because Movant failed to "identify specifically what counsel should have investigated." This claim was also denied because the dismissal of Count 4 was not a meritorious claim to have been asserted by counsel, therefore,

13

Movant cannot show prejudice. *See* [DE 49 at 44]. As to the failure to file a motion seeking access to the grand jury materials, Judge White found that Movant had failed to establish that counsel's performance was deficient or that Movant was prejudiced. Judge White also concluded that the guilty verdict renders any grand jury error harmless. As to Movant counsel's failure to assert that the Government was selectively prosecuting him because it failed to provide exculpatory evidence to the grand jury, Judge White found because the Government was under no obligation to provide such evidence to the grand jury, then his counsel cannot have rendered a deficient performance for failing to raise a non-meritorious issue. *See* [DE 49 at 50]. As to Movant's claim that the Government provided perjurious testimony, Judge White found that this claim was a bare and conclusory allegation because it failed to identify what testimony was perjurious. As to Movant's *Brady* claim, Judge White found that, accepting as true Movant's assertions that the Government withheld certain facts which were exculpatory, his claim nonetheless fails because he cannot establish the remaining prongs of *Brady* due to the more than sufficient, independent evidence adduced at trial. It follows that if the claim was meritless then counsel's performance cannot be deemed deficient. Likewise, Movant was not prejudiced. [*Id.* at 53-54]. As to Movant's claim that his counsel was ineffective for failing to file a motion for a bill of particulars as to Count 4, Judge White determined that because a bill of particulars was not warranted to obtain elucidation of the indictment, Movant cannot show deficiency or prejudice. Judge White also found that because there was ample evidence in the record to show that the police officers had probable cause to stop and search Movant's vehicle, then Movant's did not establish deficiency or prejudice. [*Id.* at 61]. As to Movant's claim that his counsel failed to file a motion to suppress based on a violation of *Massiah v. United States*, Judge White found

14

that the testimony at issue did not trigger a *Massiah* claim so Movant cannot establish prejudice. Also, as to his claim that his counsel should have requested records of calls made to the Federal Detention Center, Judge White found Movant could not show prejudice. As to his claim that his counsel should have filed a motion to suppress challenging the use of a money detecting canine, Judge White determined that Movant failed to show deficiency or prejudice. As to Movant's claim of failure to request immunity for defense witnesses pursuant to *Webb v. Texas*, Judge White found that *Webb* was inapplicable; that the Court lacked the authority to grant immunity to defense witnesses and that Movant has failed to establish deficiency and prejudice. As to his final sub-claim that counsel was ineffective for failing to recuse the undersigned, Judge White found that this issue was litigated on more than one occasion and had been denied multiple times. As such, Judge White concluded that Movant failed to show that his counsel's performance was deficient and that he was prejudiced.

Movant filed numerous objections to the R&R.[9] [DE 56 at 21-43]. Only certain of these objections warrant consideration because the large majority are simply conclusory statements with no factual or legal support. For example, Movant asserted that Judge White "overlooked facts and clearly misapprehended the law;" yet he fails to advise which facts were missing from the analysis or what law was misunderstood.

However, Movant asserted a specific objection regarding the legal standards for an evidentiary hearing. Movant asserted that to be entitled to an evidentiary hearing he need only "make a prima facie showing that his claims are not frivolous, are not based on unsupported

_____

[9] Throughout his objections, Movant repeatedly asserts that Judge White has a conflict of interest because of his prior employment as an Assistant United States Attorney. Movant's objections are not worthy of repeating here and, again, are expressly rejected.

generalizations, and are not affirmatively contradicted in the record in order for this Court to hold an evidentiary hearing." As such, Movant took issue with Judge White's findings that because "there is nothing in the record to suggest the court would have granted the movant's request," he is not entitled to an evidentiary hearing or relief. While Movant's assertion regarding the legal standard for an evidentiary hearing being granted in a §2255 proceeding is correct, he is only telling part of the story. In addition to the standard cited by Movant, he must also "*allege* facts that, if true, would entitle him to relief." *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989)(emphasis in original). Movant has not done so.

The Court concurs with Judge White because unlike some ineffective assistance of counsel claims which do require an evidentiary hearing in order to resolve the claim, these sub-claims do not. Even if his trial counsel had argued the points that Movant puts forth here, Movant would still not be entitled to relief because he is wrong about the legal assertions he has made. Hence, the finding that even if Movant's counsel had timely requested what Movant suggests, he would be unable to show prejudice (an essential element of any *Strickland* claim). This finding renders the need for an evidentiary hearing superfluous because Movant would not entitled to relief even if he provided evidentiary support for his arguments. Counsel cannot be said to be ineffective for failing to make an argument which would not have prevailed because the law does not support it. The Court adopts the R&R.

Further, the Court has also reviewed Movant's objections to the factual findings which Judge White used to support his determinations. The Court finds that Movant has not provided the undersigned with an accurate summary of the testimony. Movant chose to "cherry-pick" which testimony appeared favorable to him and ignored the rest. The record shows that while

Andrew Diaz gave a prior sworn statement that the money Movant retrieved from Mr. Diaz's home was for payment of legal services provided to Mr. Diaz's brother Rudy; he clearly testified at trial that the sworn statement was not truthful. [DE 48-9 at 18]. The portion of the record that Movant cites in his objections are the portions of cross-examination wherein his counsel *was reading the sworn statement into the record* and cross-examining Mr. Andrew Diaz. *See* [DE 48-9 at 160-63]. This was not testimony given at trial. Indeed, the sworn statement was specifically refuted by Mr. Diaz at trial. Mr. Diaz clearly testified that the $266, 800 had not been the agreed on payment for legal services which were provided to Mr. Diaz's brother because those fees were $50,000 and had already been paid. [DE 48-9 at 151-52]. Movant's failure to acknowledge, at a minimum, the conflicting version of events caused his objections to be misleading and inaccurate.

Movant also objects to Judge White's conclusions regarding the claim that his counsel was ineffective for failing to file a motion for a bill of particulars. [DE 56 at 28]. Movant does so, in part, because he believes that the undersigned "suggest[ed] that counsel should have sought a bill of particulars pursuant to Rule 7(f)." [*Id.*]. This is not so. The Order that Movant refers to was denying a Motion for Judgment from Relief. As to Movant's argument that the indictment was insufficient, the undersigned found that this argument was untimely because such a challenge must be made before trial. Case No. 03-20272-CR-SEITZ (DE 344 at 2). In support of that determination, the undersigned pointed out that, one of his failings was to have not sought a bill of particulars. This comment did not suggest in any way that a bill of particulars would have been granted. Rather, it simply illustrated how Movant failed to diligently protect his ability to challenge the indictment. To suggest a broader meaning, is simply incorrect.

Movant further objects to what he classifies as a mischaracterization of the facts and the trial record by Judge White on page 58 of the R&R regarding the invocation of his *Miranda* rights. [DE 56 at 29]. The Court agrees that there was an error as to citation of the record which supports Judge White's factual statement.[10] To be clear, Detective Fernandez's affidavit in support of the application for a search warrant is precisely as follows:

> The white male was then identified as Juan Carlos ELSO and was placed under arrest and advised of his *Miranda rights* for Reckless Driving and Willful Fleeing/Eluding. Movant invoked his rights **but advised your affiant that he contacted his attorneys while we were trying to stop him and he wanted one of the attorneys to take custody of his vehicle.**

Case No. 03-20272-CR-SEITZ (DE 61 at 28) (emphasis added). As more often than not, Movant's objection only tells half the story. In the objection Movant asserted that "[m]oreover, Det. Fernandez's search warrant affidavit (CR-DE 61:28) specifically notes that Elso was placed under arrest and advised of his <u>Miranda</u> rights, which he invoked." [DE 56 at 29]. Noticeably absent is the remainder of the Officer's statements which clearly showed that Movant made a voluntary statement requesting his attorneys have custody of his car. This, of course, is the most relevant part of the Officer's statement. "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda v. Arizona*, 384 U.S. at 439. Movant has made no argument that his "incriminating response was the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response." *See Rhode Island v. Innis*, 446 U.S. 291,

---

[10] Judge White made a reasonable inference based on the testimony at the hearing on the Motion to Suppress; however, the best evidence of Movant's post *Miranda* statements is in the affidavit submitted with the search warrant. *Compare* Case No. 03-20272-CR-SEITZ (DE 81 at 46-48 and DE 61 at 28).

303 (1980). As such, counsel for Movant's performance cannot be deemed deficient for failing to "challenge the validity or admissibility of [Movant's] post-arrest statements." [DE 56 at 29]. The Court adopts the R&R.

Consistent with the majority of Movant's objections, he repeatedly argued that Judge White applied an incorrect standard for determining prejudice under *Strickland*. [DE 56 at 32]. Throughout his objections, Movant selectively cited direct quotes, but not in their entirety, and then argued that Judge White erred. In concluding that Movant was entitled to no relief on this claim, Judge White found that Movant did not show prejudice because "[e]ven if counsel had *pursued the issue*, there is nothing of record to suggest that the outcome of the suppression proceedings would have been different." [DE 49 at 60]. Movant contorts this statement to argue that Judge White used the wrong prejudice standard. He does so by quoting only the "there is nothing of record to suggest that the outcome of the suppression proceedings would have been different" part of the quotation. Then, Movant argues that the appropriate standard for ineffective assistance of counsel for failing to file a motion to suppress is: "whether the failure to investigate and make the motion to suppress rendered the proceeding itself unfair, even if such failure "cannot be shown by a preponderance of the evidence to determine the outcome." *Smith v. Dugger*, 911 F.2d 494 (11th Cir. 1990). This is a true statement.

Again, this only tells half the story, because Judge White's analysis is predicated on the fact that counsel had *not* failed to make the motion. To quote the standard out of context is misleading, at best. The Court finds that the appropriate standard was applied. Movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Further, Movant

19

seemed to interpret the finding "that there is nothing of record to suggest that the outcome of the suppression proceedings would have been different" to mean that Judge White applied a standard which required Movant to prove beyond all doubt that his proceedings would have been different. This is not so; the requirement is to show a "reasonable probability." If there is "nothing of record to suggest" then there certainly is not a reasonable probability. Again, the Court finds that Movant misinterpreted Judge White's analysis.

Finally, the majority of Movant's objections are simply cut and pasted from his Reply filed on July 23, 2010 and warrant no further discussion. [DE 35]. The Court has carefully reviewed both documents and determines that the R&R adequately and appropriately denied Movant's claims.

### ii. Failure to object during jury selection pursuant to *Batson*.

Movant's entire claim is as follows[11]:

> During voir dire, counsel rendered ineffective assistance by failing to object to the prosecution's use of their peremptory challenges to systematically and primarily remove hispanic jurors, that is, jurors from the same ethnic background as that of movant.

Judge White found that Movant had failed to establish a *prima facie* case of purposeful discrimination. While that may be so, more importantly, this claim is clearly insufficiently plead. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.1991) (recognizing that vague, conclusory,

---

[11] In his Memorandum of Law, Movant provided no new facts or allegations but rather, simply made the same statement as was made here and follows it with citations to case law standing for the general proposition that juries should be made up of a fair cross section of the community. *See* [DE 1 at 33]. In his Reply, Movant again asserted the same argument with no record support. [DE 56]. Movant argued that the "record shows" the Government systematically removed Hispanic jurors. Yet, he provided not a single citation to the record to support his allegation.

speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). In order for Movant to prove a *Batson* violation, he would have had to show a *prima facie* case that the peremptory challenge was exercised on the basis of race; the burden would then shift to the Government to articulate a race-neutral explanation for striking the jurors in question, and then the trial court would determine whether Movant had carried his burden of proving purposeful discrimination. *See Batson v. Kentucky*, 476 U.S. 79 (1986). Here, Movant not only failed to establish a *prima facie* case but failed to provide such basic information as the racial make-up of the jury, which jurors did the Government exercise impermissibly peremptory strikes against, and how he was prejudiced by his counsel's deficiency to raise this challenge at trial.[12] In sum, Movant has argued none of the essential elements which are required to successfully assert this claim. The Court adopts the R&R.

### iii. Failing to call certain witnesses and present readily available defenses.

Movant next argued that his counsel was ineffective because he failed to call numerous witnesses, including DEA Special Agent Jane Anglestad, IRS Special Agent Jerome Lewis, Miami Dade Officer Henry O. Fernandez, George Lee, and Kimberley Simms. Movant also contended that counsel was ineffective for failing to put forth an alibi defense, introduce records obtained from the Government which clearly show Movant was not used to launder money by the Diaz brothers, put forth a good faith reliance defense based on a meeting Movant had with Arturo V. Hernandez, Esq., and that trial counsel lost or misplaced a videotape re-enactment of a car

---

[12] The undersigned, who presided over Movant's trial, has reviewed the racial make-up of the jury and the Government's challenges. On its face, it does not appear that Hispanic jurors were systematically excluded by the Government. However, the undersigned need not devote an exhaustive review here because it is Movant's burden to establish a prima facie case and he has not done so.

chase.

As to the failure to call certain witnesses, Judge White determined that Movant's allegations were bare and conclusory. As to all witnesses other than Kimberley Simms, the Court adopts the R&R. Movant failed to provide the Court with even the most basic of details regarding what these witnesses would have testified to other than the blanket statement that their testimony would have "called into question, the veracity and believability of the Government's witnesses." [DE 1 at 34]. As such, Movant is entitled to no relief. Movant is also not entitled to relief based on his allegation that his counsel failed to introduce records obtained from the Government which "clearly show that the Diaz brothers utilized their family, not movant, to launder their drug proceeds." [DE 1 at 9]. Movant has provided no factual support for this claim and he has failed to identify which documents or their contents support this claim. Likewise, Movant's allegation regarding a misplaced or lost videotape is bare and conclusory. Movant fails to assert how this videotape would have aided in his defense in any fashion. The Court is not inclined to speculate. As such, he is entitled to no relief.

However, as to Kimberley Simms, the alleged failure to present travel documents supporting an alibi defense, and the good faith reliance defense, the Court does not adopt the R&R. Unlike almost all of his other claims, Movant did say what Ms. Simms could have testified to and why it was relevant to his defense.[13] Judge White found that Movant cannot prevail on this claim because "counsel's strategic decision cannot be second-guessed." [DE 49 at 72]. The Court agrees with the legal premise but rejects Judge White's conclusion.

---

[13]However, Movant's papers do not provide the specifics that are required for compliance with a Fed. R. Crim. P. 12.1(a) disclosure. *See United States v. Jones*, 456 Fed. Appx. 841 (11th Cir. Feb. 2, 2012) (disclosure that the defendant was visiting Buffalo, New York insufficient).

Movant requested an evidentiary hearing on this claim. While Movant has made some factual allegations supportive of his claims, he has not met the threshold requirements for an evidentiary hearing because the criteria of the entitlement to an evidentiary hearing is two-fold. A movant must not only allege facts that support his claim but those facts must *also* entitle him to relief. Based on this criteria, the Court denies the claim and finds that Movant is not entitled to an evidentiary hearing, but not for the reasons expressed in the R&R. The Court declines to adopt the portion of the R&R regarding strategic decisions of trial counsel and other factual determinations made without an evidentiary hearing.

In order for the Court to conclude that counsel made a strategic decision which cannot be second-guessed or that Ms. Simms intended to assert her Fifth Amendment rights, the Court must first find that counsel actually made a strategic decision. Without an evidentiary hearing, the Court is unable to do so. While it very well may be that counsel for Movant made a thoughtful and well-reasoned decision not to call Ms. Simms, not to have introduced travel and passport documents, and not to have pursued a good faith reliance defense, with the record as it stands, the Court has no way of knowing.

Nonetheless, the entitlement to an evidentiary hearing is not absolute. "The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only *allege* - not prove - reasonably specific, non-conclusory facts that, if true, would entitle him to relief. If the allegations are not affirmatively contradicted by the record and the claims are not patently frivolous, the district court is required to hold an evidentiary hearing. It is in such a hearing that the petitioner must offer proof." *Aron v. United States*, 291 F.3d 708, 715, n.6 (11th Cir. 2002)(emphasis in original). Here, Movant has not properly alleged reasonably specific, non-

conclusory facts as required under law which, if were true, would entitle him to relief.[14]

In his §2255 petition, Movant alleged that his counsel rendered deficient and ineffective assistance first because counsel "presented a rambling theory of defense that did not follow the law or common sense, rather than presenting a 'good faith' defense based upon the provisions of Title 18 U.S.C. §1957(f)(1)." [DE 1 at 8]. Movant also alleged that "counsel failed to present movant's alibi defense, which included travel documents and passport entries showing that movant was outside the country during the dates that the alleged money laundering took place." *Id.* at 9.

In support of his good faith defense argument, Movant offered no factual details which would support his assertion until his Reply filed with the Court on July 23, 2010. [DE 56]. It was in reply that, for the first time, Movant alleged "counsel was aware that movant had consulted with criminal defense attorney Arturo V. Hernandez regarding the Moreno investigations and the seizure of money on November 15, 2001. During the consultation, Hernandez advised movant that under 18 U.S.C. §1957(f)(1) a criminal defense attorney is exempt from prosecution for accepting a bona fide attorney's fee payment for representation in a criminal case, even if the fee emanated from an illicit source." [DE 56 at 91]. Movant further alleged that "[d]efense counsel was also aware that movant consulted with several attorneys, wherein he fully disclosed all material facts with respect to this case, and relied on their advice in presenting his sworn affidavit in the state court forfeiture proceedings, which affidavit is at the

---

[14] This is not to say that Movant otherwise has met the standard articulated in *Aron*. However, the sufficiency of Movant's factual allegations (as opposed to proof) are of little concern. Even taking his allegations as true, Movant has not alleged facts which would entitle him to relief. Therefore, the Court does not need to analyze the legal adequacy of his allegations under the *Aron* standard for an evidentiary hearing.

crux of the instant prosecution." *Id.* at 57.

In support of his alibi defense argument, Movant alleged, in the memorandum of law which accompanied his §2255 motion, that "documents and passport entries would have established movant's alibi defense, together with the testimony of Kimberley Simms who would have testified that she and movant were outside the country on a cruise during the time that Elizabeth Garcia claimed she was delivering the $9,800 alleged in Count 2." [DE 1 at 34]. Movant further specified that "[p]rior to trial movant provided counsel with travel documents, itineraries, cruise line vouchers and information substantiating that movant and Kimberley Simms were on a Caribbean cruise outside the country during the time Elizabeth Garcia claimed she was delivering the $9,800 to movant." [DE 35 at 57].

Assuming all the allegations are true, neither of the above claims, as pled, would entitle Movant to relief under 28 U.S.C. §2255. Movant did not provided the Court with any additional evidence which would corroborate his allegations. Movant's entire claim is based solely on his own assertions. These assertions were made in the text of pleadings filed with the Court under "penlaty [sic] of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct." [DE 56 at 98]. Movant provided no affidavits from any other persons including those he had alleged to have spoken to nor has he proffered their testimony. Therefore, the Court can only analyze the claims based on the pleadings. Having done so, the Court concludes that Movant's own words serve as the basis for the denial of his claim.

First, "[t]he good faith reliance defense seeks to "refute the government's proof that the defendant intended to commit the offense." *United States v. Kottwitz*, 614 F.3d 1241, 1271 (11th Cir. 2010), *modified in part on rehearing* by 627 F.3d 1383 (11th Cir. 2010). To establish the

defense, the defendant must show that he "(1) fully disclosed all relevant facts to the expert and (2) relied in good faith on the expert's advice." *Id.* On its face, the Movant's claims fails. The defense is one of *reliance*. The clear meaning of a good faith reliance defense on the advice of counsel is that *prior* to committing the offense, the defendant sought the advice of an attorney and, after disclosure of all the relevant facts, counsel advised that the proposed course of action would not violate the law. *See United States v. Johnson*, 730 F.2d 683, 686 (11th Cir. 1984). Movant, in his own words, alleged that he met with Arturo V. Hernandez "regarding the Moreno investigation and the seizure of money on November 15, 2001." It was during that consultation that Movant alleged Mr. Hernandez advised him "that under 18 U.S.C. §1957(f)(1) a criminal defense attorney is exempt from prosecution for accepting a bona fide attorney's fee payment for representation in a criminal case, even if the fee emanated from an illicit source." ([DE 56] at 91). Movant was arrested on November 15, 2001. As the meeting with Mr. Hernandez clearly occurred *after* the offense was committed, regardless of what Mr. Hernandez advised, Movant cannot be said to have relied on that advice *prior* to committing the crimes.[15] As such, his counsel's performance cannot be said to be deficient for failing to assert a meritless defense. *See Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir.1989) (holding where "claims were meritless, it was clearly not ineffective for counsel not to pursue them."). An evidentiary hearing will not change that plain fact.[16]

---

[15] In fact, Movant's own words make it appear as though the consultation with Mr. Hernandez served more as an after the fact justification or explanation for Movant's criminal actions rather than reliance on legal advice.

[16] Movant also asserted that he "consulted with several attorneys, wherein he fully disclosed all material facts with respect to this case, and relied on their advice in presenting his sworn affidavit in the state court forfeiture proceedings, which affidavit is at the crux of the

Turning to the alibi defense, Movant was charged in Count 2 with violating Title 18, United States Code, Section 1956(h) "[f]rom in or about July, 1999, the exact date being unknown to the Grand Jury, through on or about September 19, 2002 . . ." *See* Case No. 03-CR-20272-SEITZ (DE 2 at 3). On its face, the indictment covers a larger period than the limited amount of time for which Movant contended to have an alibi. The conspiracy as charged in the indictment is alleged to have spanned over a year. "To obtain a conviction for a ... money laundering conspiracy ... the government bears the burden of proving beyond a reasonable doubt that: (1) two or more persons agreed to commit a crime, in this case a ... money laundering violation; and (2) that [the defendant], knowing the unlawful plan, voluntarily joined the conspiracy." *United States v. Johnson*, 440 F.3d 1286, 1294 (11th Cir. 2006). In his §2255 motion, Movant argued that his counsel was ineffective for failing to present an alibi defense. Movant asserted that he was out of town when a specific transfer of funds were made and there was direct evidence of his absence which his counsel failed to present in his defense. His singular focus is on a $9800 transfer from Elizabeth Garcia. [DE 35 at 57]. However, the charged 1956(a)(1)(B)(ii) conspiracy was much farther reaching than one financial transaction.

At trial, the Government put on multiple witnesses who testified that Movant was engaged in a conspiracy to launder money and did so to avoid a transaction reporting

---

instant prosecution." [DE 35 at 56-57]. This assertion is insufficiently pled. It lacks the names, dates, and content of the advice relied upon. However, even if it were properly pled, it still fails to meet the standard for an evidentiary hearing in that, even if true, the Movant would not be entitled to relief. Here, Movant alleged that he relied on the advice of counsel in presenting a sworn affidavit in a state court forfeiture proceeding. An affidavit filed in an entirely separate proceeding does not refute the Government's proof here that the Movant intended to conspire to launder money which were the proceeds of distribution and sale of cocaine. While it may provide the basis for other arguments or defenses, it does not provide a good faith reliance defense. *See United States v. Johnson*, 730 F.2d at 686.

requirement. [DE 49 at 14-30]. For example, there was testimony that Movant also transferred funds for Heiner Gaviria to Horacio Uribe on more than one occasion. These transactions were separate and apart from the singular transfer by Elizabeth Garcia which is the sole focus of Movant's claim. *See* [DE 49 at 18-19]. There was an abundance of evidence adduced at trial to show that Mr. Elso knew of the unlawful plan, voluntarily joined the plan with the intention of avoiding the reporting requirement under federal law.

Therefore, accepting as true Movant's assertions regarding the travel documents provided to counsel and the testimony of Kimberley Simms, Movant is still not entitled to relief. Even if the travel documents were presented and Ms. Simms testified as proffered at an evidentiary hearing, the fact remains that the Government met its burden of proof. In a conspiracy to launder money, the Government need only prove that Movant, knowing the unlawful plan, voluntarily joined the plan. Joining in the conspiracy occurred regardless of the Movant's physical location on any given day during the period of the conspiracy. Indeed, his physical location was immaterial. As such, even if his counsel had been presented with the travel documents and the proffered testimony of Ms. Simms, an alibi defense would not have been successful to the offense as charged. Similar to Movant's other sub-claim, counsel's performance cannot be deficient for failing to present a meritless defense. "A lawyer cannot be deficient for failing to raise a meritless claim." *Freeman v. Atty. Gen.* 536 F.3d 1225, 1233 (11th Cir. 2008). The claim is denied; as is Movant's request for an evidentiary hearing. The Court does not adopt the R&R as to these two limited sub-claims but, nevertheless, the entire claim is denied. Otherwise, the Court adopts the R&R as to the remaining sub-claims under Claim 2(iii).

28

**iv. Failing to object to erroneous jury instructions, excessive security measures during trial and failing to request the Court voir dire the jurors as to outside influences.**

Movant maintained that Count 4 should have expressly alleged interstate and foreign commerce as an essential element of the crime and, therefore, his counsel was ineffective when he failed to object to an "improper money laundering instrument for §1956 (a)(1)(B)(i) which failed to include interstate or foreign commerce as an essential element." [DE 1 at 9]. Movant also argued that his counsel should have also objected to the aiding and abetting instruction, as well as the flight instruction. Finally, Movant asserted that his counsel was ineffective when he failed to request that the Court question jurors "in light of the 'flyer' incident which occurred on Friday, December 19 and caused the Court to augment the presence of court security personnel." *Id.*

Judge White found because the jury instruction as to Count 4 was not required to have the jury find that the offense had a direct effect on interstate commerce then counsel cannot be ineffective for failing to object to the instruction as given. Judge White also found that Movant could not show prejudice. [DE 49 at 78]. The remaining allegations were found to be refuted by the record, that the jury instructions were proper as given, and that Movant had not shown prejudice. More importantly, the record expressly rejects Mr. Elso's claim because the undersigned instructed the jury that the Government must prove four facts beyond a reasonable doubt. [DE 48-16 at 34]. Each four of these necessary facts involved a "financial transaction." The Court instructed the jury that a "financial transaction" meant:

A, a transaction which in any way or degree affects interstate or foreign commerce involving the movement of funds by wire or other means; or, B, a transaction -- you see, it's in the alternative, either A or B -- a transaction which in any way or degree affects

interstate or foreign commerce involving one or more monetary instruments, which includes. . . " The term "interstate or foreign commerce" includes any commercial activity that involves transportation or communication between places in two or more states, or between someplace in the United States and someplace outside of the United States.

[DE 48-16 at 35]. Finally, Movant did not object to these determinations. *See* [DE 56 at 48]. After a *de novo* review of the record, the Court adopts the R&R. Movant's claims are either without merit because they are refuted by the record or do not establish deficiency and prejudice as required to successfully assert an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 688.

### v. Failing to timely file post trial motions.

Movant claimed ineffective assistance of counsel wherein his counsel "timely requested and received an extended period of time within which to file post trial motions, the motion was filed out of time and was denied based on untimeliness. . . " [DE 1 at 10]. Specifically, Movant asserted that his counsel should have timely filed motions for judgment of acquittal, arrest of judgment or for a new trial. [*Id.* at 9].

To begin, it is not in dispute that the motions complained of here were filed with the Court. At issue is counsel's deficiency to timely file the motions. Judge White found that contrary to Movant's assertion, the motions were reviewed on the merits and cites the Order wherein the undersigned found that "[e]ven if the Court still had jurisdiction, however, the Court would have denied the motion." [DE 49 at 85]. Judge White concluded that Movant cannot show prejudice if the "movant cannot demonstrate that the court would have granted the motion." [*Id.*]. To be clear, prejudice requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. Using this standard, the Court rejects this claim because Movant has failed to show prejudice as the undersigned alternatively denied his untimely motions on the merits. As the motion was denied, there is no reasonable probability that the result would have been different.

Even though Movant initially made only a veiled reference to his appellate rights in his motion to vacate and memorandum of law, in his reply and objections, he argued that he was deprived of appellate review due to counsel's failures. *See* [DE 35 at 58; DE 56 at 49]. The standard for ineffective assistance of counsel when the attorney's error effects the appeal is different. In pursing this argument, Movant must show a "reasonable likelihood of a more favorable outcome on appeal" had the mistake not occurred. *Davis v. Sec'y for Dep't of Corr.,* 341 F.3d 1310, 1316 (11th Cir.2003). Movant has not made that showing. In fact, Movant has not even made the argument. Relief is denied on this claim.

### vi. Drug use by co-defense counsel Ms. Montaner.

Movant alleged that "record evidence and evidence outside the record establishes that trial counsel was under the influence of drugs during and in relation to her representations of movant." [DE 1 at 36]. Movant maintained that drug use resulted in counsel failing "to properly cross examine Government witnesses, present evidence, challenge the admissibility of evidence or otherwise challenge the Government and require that they meet their burden of proof." [*Id.*]. It was not until his Reply that Movant offered even a glimpse into what evidence he had when he asserted that his counsel was abusing drugs during her representation of him. Movant asserted that counsel's "documented admission to a substance abuse treatment facility, subsequent to

movant's trial" indicated that she was under the effects of a substance during his trial. Movant did not advise the Court of when or where this admission occurred.

This claim is clearly insufficiently plead. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). While Movant claimed that there is evidence of his counsel drug use, he has provided the Court with none. As this assertion is purely speculative, Movant has not properly pled this claim.[17] More importantly, it is not simply enough that his counsel was under the influence of drugs during trial but Movant must adequately assert with specificity that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. He has not done so. As such, the Court adopts the R&R.

### vii. Failure to object to judicial fact finding and failure to preserve Sixth Amendment Rights.

Movant argued that his counsel was ineffective when he failed to object to the use of judicial fact finding to enhance his mandatorily imposed guideline sentence. Additionally, he argues counsel failed to challenge the constitutionality of, and the application of upward enhancements. *See* [DE 1 at 10]. In support of his argument, Movant cited to two cases from the United States Supreme Court which were decided *after* his sentence was imposed. Nonetheless, Movant argued that his counsel should have preserved this constitutional challenge to the

---

[17] This is not to say that the Court does not agree with Judge White's analysis, but rather that, the Court finds it unnecessary to conduct an analysis of this claim because Movant has not even asserted the most bare-boned of allegations regarding his counsel's drug use. Better yet, Movant has failed to show a reasonable probability that the outcome would have been different. To be clear, however, the Court does adopt and affirm Judge White's R&R as to this claim.

sentencing guidelines despite the fact that there was no law in support of this direct argument at the time Movant alleged it should have been made.

Judge White rejected this argument because claims of *Apprendi* error cannot be raised for the first time in a motion to vacate. [DE 49 at 87]. Likewise, *Blakely* and *Booker* do not apply retroactively to §2255 cases on collateral review. Accordingly, Judge White determined that Movant's claim for ineffective assistance of counsel was without merit because it is not deficient to fail to forsee a change in the law and Movant was not sentenced beyond the statutory maximum. [*Id.* at 90].

Movant did not make a substantive objection to this determination. *See* [DE 56 at 52]. After a *de novo* review of the record, the Court adopts the R&R. Movant's claim is without merit because he did not establish deficiency and prejudice required to successfully assert an ineffective assistance of counsel claim. Counsel's performance cannot be said to be deficient for failing to make a legal argument which, at the time it would have been made, had no legal support. *Strickland,* 466 U.S. at 694

### vii. Failure to request a role reduction, downward adjustment or departure.

Movant's final sub-claim is that his counsel "inexplicably failed to present the evidence [of his entitlement to a minor or minimal role reduction] or make such a request which resulted in actual and substantial prejudice." [DE 1 at 39]. Movant asserted that because he was the only one of the 25 individuals involved in the conduct charged who was actually charged and prosecuted for money laundering under §1956, this argument should have been made to the Court. Failure to do so, according to Movant, constituted ineffective assistance of counsel. Similarly, Movant argued that his counsel failed to seek a mitigating role reduction which would

have resulted in a three level reduction and failed to move for a downward departure pursuant to §5K2.0 based on his status as a widowed father of two minor children.

Judge White found the sub-claim that counsel failed to request a sentence reduction "clearly refuted by the record." [DE 49 at 91]. This is correct. Trial counsel for Movant did raise this argument and the undersigned found that Movant did not meet the guideline language for minimal or minor roles. [DE 48-25 at 76]. The Court adopts the R&R as to this sub-claim. As to his remaining sub-claim, that his counsel was ineffective for failing to seek sentence reductions, that too is directly refuted by the record.[18] Counsel made those arguments and the undersigned rejected those, as well. [DE 48-27 at 152]. Movant did not object to Judge White's determination. *See* [DE 56 at 48]. After a *de novo* review of the record, the Court adopts the R&R. Movant's claims are either without merit because they are refuted by the record or do not establish deficiency and prejudice required to successfully assert an ineffective assistance of counsel claim.

### CLAIM 3: INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Claims of ineffective assistance of appellate counsel are governed by the standard articulated in *Philmore v. McNeil*:

> In assessing an appellate attorney's performance, we are mindful that "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." *Id.* at 1130-31. Rather, an effective attorney will weed out weaker arguments, even though they may have merit. *See id.* at 1131. In order to establish prejudice, we must first review the merits of the omitted claim. *See id.* at 1132. Counsel's performance will be deemed prejudicial if we find that "the neglected claim would have a reasonable probability of success on appeal." *Id.*

---

[18] Movant's sub-claim regarding a downward departure under the aiding and abetting cross-reference was insufficiently pled. He offered no support for his argument and is not entitled to relief.

34

575 F.3d 1251, 1264-65 (11th Cir. 2009).

Here, Movant asserted multiple claims of deficient performance by his appellate counsel. First, Movant argued that his appellate counsel rendered ineffective assistance of counsel by failing to raise a sufficiency of the evidence argument. Second, Movant contended that his appellate counsel was ineffective for failing to raise a *Franks* issue and issues involving the Government's improper comments. Third, Movant maintained that his counsel was ineffective when he failed to raise the denial of a mistrial motion on appeal. Fourth, Movant claimed that his appellate counsel was ineffective for failing to raise the ineffectiveness of his trial counsel. Fifth, Movant asserted that his counsel's performance was deficient because he failed to appeal the abuse of trust/special skills and obstruction of justice enhancements. Finally, Movant argued that his counsel made an unreasonable concession during oral argument. [DE 1 at 39-46].

### i. Failing to raise a sufficiency of the evidence argument.

Movant argued that his appellate counsel "inexplicably and unreasonably failed to raise the sufficiency of evidence claims as to Counts 1 and 4 based on the Government's failure to prove an interstate commerce nexus in the transaction at issue." [DE 1 at 12]. Movant continued to argue that the Government failed to satisfy its burden to prove that a financial transaction that had an impact on interstate or foreign commerce occurred. Movant also argued that the sufficiency of the evidence as to Count 2 was also deficient because Elizabeth Garcia "never testified that she advised movant or anyone at the law office that the $9800 were drug proceeds." [*Id.* at 41].

In his R&R, Judge White found that there was ample evidence to support the interstate

commerce component of the statute; therefore, even if this issue had been raised on appeal, the claim had no merit. As such, Movant was unable to show prejudice. [DE 49 at 95-6]. As to Movant's second ground for relief regarding knowledge of the nature of the proceeds, Judge White determined that the Government was not required to show that the proceeds were specifically from the sale and distribution of drugs as opposed to unlawful activity. Therefore, Mr. Elso did not show prejudice because he would not have prevailed on appeal. Judge White concluded that "[r]egardless, the government also established that the laundered funds were monies from Colombian drug suppliers and from the Diaz brothers who were known drug dealers." [DE 49 at 97].

As to Counts 1 and 4, Movant objected asserting similar arguments he had asserted in Claim I (lack of subject matter jurisdiction) and Claim II (ineffective assistance of trial counsel) regarding the sufficiency of the Government's proof and the sufficiency of the indictment. As the Court has already addressed these issues, on more than one occasion, no further discussion is required and the R&R is adopted.

Movant also argues that Judge White's determination regarding the proceeds at issue in Count 2 of the indictment was erroneous because the Government does indeed need to show that the proceeds were from the sale and distribution of controlled substances. *See* [DE 56 at 55]. The Court finds that a determination of what the Government had to prove is superfluous. Accepting Movant's legal argument as true, the Government did offer evidence of precisely what Mr. Elso argues the Government must prove in order to obtain a conviction. Simply, Mr. Elso's factual assertions are refuted by the record. More importantly, Mr. Elso did not show that his appellate counsel was deficient for failing to raise this argument.

36

There is ample evidence in the record to show that the laundered funds were from drug

sales and that Movant was clearly aware that these funds were from a drug trafficker. [DE 48-21

at 114-18]. The record shows that, over a period of years, Mr. Elso socialized with persons who

were known drug dealers, was present with these known drug dealers for more than one

discussion of the sale of cocaine, and then accepted cash proceeds from them which were

deposited into his trust account and then redistributed, minus a "commission," while filing no

currency reports. The Court cannot find on this record that appellate counsel's performance was

deficient for failing to raise this issue on appeal or that Mr. Elso would have been prejudiced.

The prejudice prong of the *Strickland* test is whether there was a reasonable probability that had

appellate counsel not been deficient, the appellate court would have granted the petitioner a new

trial. The Court finds that it would not. The Court adopts the R&R as to the sufficiency of the

evidence and appellate counsel's performance. Movant is entitled to no relief on this claim.

### ii. Failing to raise a *Franks* issue and issues involving the Government's improper comments.

Movant asserted that he specifically requested that appellate counsel raise both a *Franks*

*v. Delaware* violation and the Government's improper comment on Movant's silence and burden

shifting. However, appellate counsel failed to raise those claims on direct appeal. Movant argues

that this constitutes ineffective assistance of appellate counsel. [*Id.*] Movant filed no reply to

rebut the Government's response to this claim. *See* [DE 35 at 66].

Judge White determined that Movant's claim fails because his trial counsel did raise a

motion to suppress and its denial was proper because Movant had not "made a substantial

preliminary showing that Detective Fernandez knowingly and intentionally made false statements

in his affidavit." [DE 49 at 100]. As such, appellate counsel cannot have been deficient in failing to raise a non-meritorious issue. Further, Judge White found that the comments made by the prosecutor, if objectionable at all, to be no more than harmless. [*Id.* at 104].

Movant objected and argued that the error was not harmless and that his appellate counsel should have raised this as a constitutional violation, "rather than the weaker non-constitutional claims he pursued in movant's direct appeal, there is a reasonable probability that the outcome of the appeal would have been different." [DE 56 at 60]. Movant offered little more to support this assertion other than a general broad constitutional right to a meaningful adversarial testing as required by our system of justice. [*Id.*]. While Movant continued to assert that the objectionable comment came - not from the prosecutor - but from Heiner Gaviria, a cooperating Government witness, he does not provide the Court with the alleged comment nor does he even cite the location in the transcript where this occurred. Without more, the Court cannot properly access Movant's claim because it is insufficiently pled.[19] This claim is denied.

### iii. Failure to raise the denial of a mistrial motion on appeal.

Movant argued that the trial judge erroneously denied a motion for mistrial and his appellate counsel was ineffective for failing to raise this issue on appeal. [*Id.* at 2]. At trial,

---

[19] Rather than articulate his claims here, Movant simply stated that he "adopts and incorporates the arguments set forth in his motion for judgment of acquittal, arrest of judgment, or new trial (DE 261), which was denied as untimely." [DE 1] at 42]. These documents were filed in Movant's underlying criminal case not with this Motion brought pursuant to 28 U.S.C. §2255. The Court finds this "scatter shot" approach to pleading unacceptable. Accordingly, the Court did not consider argument which would require the Court to go back through motions filed in an entirely different case closed four years earlier and guess which arguments Movant chooses to incorporate here. Judge White did so but the Court declines. However, the Court has reviewed the R&R and finds that this claim has been given a thorough review and was properly denied.

Andrew Diaz testified to hearsay statements made by John Suarez. Movant asserted that the admission of theses statements violated 801(d)(2)(E) of the Federal Rules of Evidence.[20] Movant maintained that the undersigned erred in finding that these hearsay statements were admissible because they were in furtherance of the conspiracy. [DE 35 at 67]. Movant supported this argument by citing *United States v. Magluta*, 418 F.3d 1166 (11th Cir. 2005).

Judge White rejected Movant's assertions because the "evidence at trial established that the movant was accepting unreported cash proceeds from the Diaz brothers, which he laundered through his trust account to pay a debt that Andy owed to an auto dealer. Likewise, the movant was involved in obstructing justice by meeting with a known fugitive, Rudy Diaz, counseling Andy to flee after the $63,000 seizure, and then following his return, having him swear to a false affidavit prepared by movant claiming that certain monies were derived from jewelry sales and not the sale of drugs. " [DE 49 at 108]. Given this backdrop, Judge White concluded that Movant has not shown prejudice because even if counsel had made these argument on direct appeal it would not have affected the outcome of the proceedings. Further, Judge White concluded that, even if, the introduction of such statements was improper, "it was not so prejudicial as to warrant vacatur of the movant's convictions." [*Id.*].

Movant objected to Judge White's factual findings at pages 105-106 of the Report. He claims that Judge White relied solely on the direct examination and failed "to address the facts elicited on cross-examination." Movant also objected to Judge White's legal conclusions. The

---

[20] Movant also argued that his appellate counsel unreasonably failed to "challenge the validity of *other* 404(b) items of evidence wrongfully admitted." [DE 1 at 13](emphasis added). Movant does not specify what 404(b) items were wrongfully admitted and the Court will not guess. This portion of the sub-claim is denied as insufficiently pled.

remainder of Movant's objections are simply a cut and paste of his reply filed at [DE 35].

First, Movant's objections offer no details as to why he is objecting to the findings of Judge White other than to assert a general objection with no factual support. For example, he argues that "the Magistrate fail[ed] to address the testimony of defense witness John Suarez, who testified (DE 271) and contradicted many of the alleged facts upon which the Magistrate relies." [DE 56 at 60]. However, Movant failed to point to one fact that was contradicted by Mr. Suarez and did not cite to the testimony which would support his assertion. The Court declines to venture a guess as to which facts may have allegedly supported Movant's contention.

Second, the Court has reviewed the facts and the law and adopts the R&R. At trial, the undersigned found that in order for the 801(d)(2)(E) evidence to come in, the Government must establish that: 1) there was a conspiracy during which that statement was made; 2) that the statement was in furtherance of the conspiracy; and 3) that the defendant was a member of that conspiracy. [DE 48-9 at 1-2]. This is the correct standard. *See United States v. Magluta*, 418 F.3d 1166, 1177-78 (11th Cir. 2005). While Movant cited *Magluta* in support of his argument, there is a critical distinction. At issue in *Magluta* were statements which were made well after the end of the conspiracy as opposed to here where the statements were made during or within the "on or about" period of the indictment. *See* [DE 48-9 at 75]. As such, *Magluta* offers Movant no support for his objection. The R&R is adopted.

### iv. Failure to raise trial counsel's errors and omissions.

Movant next asserted that his appellate counsel was ineffective for failing to raise the ineffectiveness of his trial counsel. Specifically, Movant argued that appellate counsel failed to argue: 1) trial counsel's failure to timely make post trial motions; 2) trial counsel's presentation

of a "rambling theory of defense which did not follow the law or common sense;" 3) ineffective cross-examination of the Diaz brothers and failing to object and/or preserve Movant's Sixth Amendment rights. [DE 1 at 14]. Movant did not file a reply with the Court as to this sub-claim. [DE 35 at 69].

Judge White determined that because Movant was not entitled to any relief on the underlying claim for ineffective assistance of trial counsel, he cannot establish prejudice under *Strickland* "arising from appellate counsel's failure to pursue these nonmeritorious claims on direct appeal." [DE 49 at 110]. Movant filed no objection to this recommendation and the Court sees no reason why it should not be adopted. For the reasons stated in the analysis of these same claims as to trial counsel, the Court adopts the R&R because Movant has failed to show deficiency or prejudice.

### v. Failed to appeal the abuse of trust/special skills and obstruction of justice enhancements.

Movant maintained that although his "counsel raised these issues, he merely argued that the enhancements were applied in violation of the *Blakely/Booker* principles, an issue he failed to properly preserve during the sentencing hearing. Counsel nevertheless failed to raise the unconstitutionality of the extra verdict enhancements or the Court's abuse of discretion in the actual fact finding process." [DE 1 at 14]. Therefore, Movant argued, appellate counsel was ineffective. Movant offered little by way of facts or legal precedent to support his argument. He filed no argument as to this sub-claim in his Reply to the Government's response. [DE 35 at 69]. Similarly, Movant filed no objection to the R&R. [DE 56 at 64].

Regardless, Judge White did a very thorough review of the facts at sentencing and the

applicable law. After a *de novo* review, the Court adopts the R&R because, as Judge White correctly determined, the underlying claim lacked merit. Therefore, appellate counsel cannot be deficient and Movant was not prejudiced when his appellate counsel failed to raise a nonmeritorious claim on direct appeal. *See Philmore*, 575 F.3d at 1264-65.

### vi. Counsel made an unreasonable concession during oral argument at the Circuit Court of Appeals.

In his final sub-claim, Movant contended that appellate counsel "improperly and unreasonably conceded the crux and basis of movant's defense" during oral argument. [*Id.* at 15]. At issue is counsel's concession that "the concealment prong of the money laundering statute would be violated even if the drug money involved in the transaction was an attorney's fee." [*Id.*]. Movant argued that "whether the monies represented **bona fide** attorney's fees was not only relevant, it was highly probative of movant's innocence." [*Id.*] (emphasis in original). Movant argued that appellate counsel's concession was "erroneous and flawed." [*Id.* at 46]. Movant offered no legal precedent for his argument. Indeed, there is none.[21] On direct appeal, the Eleventh Circuit found that "even if the transaction involved attorney's fees, it cannot defeat a conviction for §1956 if he knew and intended that the transaction was designed to conceal or disguise the nature, or the control of the proceeds of specified unlawful activity." *United States v. Elso*, 422 F.3d 1305, 1309 (11th Cir. 2005).

As a result, Judge White correctly found that Movant cannot establish either deficient performance or prejudice arising from counsel's concession during oral argument." [DE 49 at

---

[21] In his objections, Movant cited *United States v. Shelnutt*, 2010 U.S. Dist. Lexis 15129 *Fn. 1 (M.D. Ga. 2010). *Shelnutt* does little to aid Movant's cause as *Shellnut* cites to the Eleventh Circuit's opinion on this very claim as asserted in Movant's case. *Id.* (citing *United States v. Elso*, 422 F.3d 1305 (11th Cir. 2005).

117]. The Court adopts the R&R.

## CLAIM 4: DUE PROCESS VIOLATIONS

In his §2255 Motion, Movant argued a wide variety of constitutional violations. First, he asserted prosecutorial misconduct before the grand jury. Second, Movant contended that prosecutors knowingly relied on perjured testimony at the suppression hearing and at trial. Third, Movant declared that the Government suppressed or withheld exculpatory evidence in violation of *Brady*. Fourth, Movant argued that the Government interfered with Movant's Sixth Amendment right to compulsory process. Fifth, Movant asserted that the Government constructively amended the indictment at trial. Sixth, Movant accused the Court of judicial bias. Seventh, the trial judge's refusal to grant severance of Count 2 denied Movant his due process. Eighth, the trial judge violated Movant's right to a public trial. Finally, the imposition of a mandatory guidelines sentence and the accompanying judicial fact finding violated Movant's Sixth Amendment's rights. *See* [DE 1 at 46-67].

### i. Prosecutorial misconduct before the grand jury.

Movant argued that the Government "suppressed and/or concealed material facts and otherwise engaged in fundamentally unfair tactics." [DE 1 at 16]. Specifically, Movant asserted that the Government "misled the grand jury by presenting and relying on hearsay testimony, perjured testimony and by making statements or arguments in a manner calculated to inflame the grand jury unfairly against movant." [*Id.*]. Movant claimed that the testimony of Wlberth Gaviria and Francisco Gato was false and inadmissible hearsay. Movant argued that because the Government was in possession of both his and Andrew Diaz's sworn statements that the Government was obligated to present these statements to the grand jury and let the grand jury

"decide the truthfulness or veracity of the sworn statements." [DE 1 at 17].

Judge White found this claim to be "a mere reiteration of arguments previously raised in relation to claims one and two above, and should be denied for the reasons expressed therein." [DE 49 at 118]. Nonetheless, Judge White's R&R analyzed this claim on the merits and found it to be without merit. Movant objected citing no law or any other legal basis for the objection other than Judge White was once an Assistant United States Attorney in the Southern District of Florida and that presumably clouds his judgment or assessment of this claim.

Having previously rejected objections regarding Movant's recusal of Judge White, the Court finds this objection merits no further discussion. *See supra* at 2. Furthermore, this claim, when presented as an ineffective assistance of counsel claim, was rejected because the underlying claim lacked merit. Therefore, this claim is again rejected.

### ii. Perjured testimony at the suppression hearing and at trial.

Movant contended that the Government "willfully presented the testimony of Elizabeth Garcia, Francisco Gato and Detective Henry O. Fernandez with the knowledge that their testimony was perjurious." [DE 1 at 17]. Movant's claim is based primarily on the fact that he alleges to have evidence that contradicts the testimony at issue. Assuming Movant's factual assertions are correct, that, in and of itself, does not mean that the Government knowingly put forth perjured testimony. Indeed, that does not even make the testimony perjurious.

Judge White found that Movant "has failed to establish that the Government knowingly suborned perjury, and much less that his due process rights were violated for any of the reasons set forth in relation to this claim." [DE 49 at 122]. Movant's objections do little, if anything, to dissuade that conclusion other than to rehash the same meritless arguments as presented in his

§2255 motion. This claim is denied.

### iii. Government suppressed or withheld exculpatory evidence in violation of *Brady*.

Movant asserted that the Government "willfully suppressed and/or withheld materially exculpatory evidence in order to insure that movant would not receive a fair trial and would be wrongfully convicted." [DE 1 at 19]. Specifically, Movant maintained that audio recorded conversations between him and Francisco Gato were exculpatory and the Government failed to disclose those audio tapes. [*Id.*]. While Movant argued that this exculpatory evidence "would have clearly established that movant was not involved in any illicit money laundering scheme," he does not advise the Court what the exculpatory evidence was other than to make conclusory statements about how it would have established that Movant was not involved in the crime.

Judge White rejected this claim because Movant had failed to offer any evidence whatsoever that the audiotapes complained of here even exist. *See* [DE 49 at 122]. He further rejected the claim because Movant offered no evidence that the witnesses would testify as proffered.[22] [*Id.* at 132].

Movant objected and maintained that he did provide the Court a specifically detailed basis for this claim. [DE 56 at 70]. The Court disagrees.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court established three criteria a criminal defendant must prove in order to establish a violation of due process resulting from the prosecution's withholding of evidence. Specifically, the defendant alleging a *Brady* violation must demonstrate: (1) that the prosecution suppressed evidence; (2) that the evidence suppressed

---

[22] Judge White did not address Movant's discovery request pursuant to Rule 6(a) of the Rules Governing §2255 Proceedings. However, this request is denied because Movant has failed to show "good cause" as required by the Rule.

was favorable to the defendant or exculpatory; and (3) that the evidence suppressed was material. *United States v. Severdija*, 790 F.2d 1556, 1558 (11th Cir. 1986). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Stewart*, 820 F.2d 370, 374 (11th Cir. 1987)(quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Here Movant fails to even establish a basis for the first prong of *Brady* that the exculpatory evidence Movant claims was suppressed exists. Movant has done nothing other than assert a baseless claim that the Government withheld audiotapes which no one has seen or heard or is even aware of. More importantly, in order to be entitled to an evidentiary hearing on this claim, Movant must demonstrate a reasonable probability that the result of the proceedings would have been different if his factual allegations are proven. *See Stewart*, 820 F.2d at 374. He has not done so. This claim is rejected.

### iv. Government interfered with Movant's Sixth Amendment right to compulsory process.

Movant argued that the Government "intentionally interfered with movant's Sixth Amendment right to compulsory process by preventing him from calling defense witnesses." [DE 1 at 20]. The basis for this claim comes from the immunized testimony of Davila and Smith. Before trial, Davila and Smith were granted immunity and made certain statements which the Movant contended were exculpatory. Movant claimed that the Government later threatened these witnesses with indictment or prosecution if they testified on Movant's behalf. *See* [DE 1 at 20]. Movant also asserted that because the Government failed to extend immunity to Smith this precluded Smith from testifying because she had to assert her Fifth Amendment right based on a

Governmental threat of perjury charges.

Judge White denied this claim because he found it is barred because the claim was raised and summarily rejected on direct appeal. [DE 49 at 123]. Nonetheless, Judge White also reviewed the claim on its merit and found that there is "no objective evidence that these witnesses would have testified as proffered by the Movant, even if granted immunity." [*Id.* at 125]. Judge White concluded that '[u]nder the totality of circumstances present here, Movant has not demonstrated unlawful Government interference." [*Id.* at 127].

Movant objects to Judge White's conclusions because he asserts that Judge White misinterpreted his claim when he found that it was made on direct appeal. Movant argues that his claim on direct appeal was regarding whether the court "had the authority to grant 'judicial immunity' to the defense witnesses." [DE 56 at 71]. Whereas here, Movant asserts that his right to compulsory process was violated by the Government. This distinction matters little because ultimately Judge White addressed and appropriately rejected this claim on the merits.      There is no evidence that the Government engaged in anything nefarious other than to inform certain persons that they may be the target of criminal prosecution. There is nothing improper in notifying a witness that they may want to assert their Fifth Amendment rights for self-protection as long as it is done so in good faith. Movant has not offered any evidence to support his allegations that the Government engaged in interference or intimidation of witnesses. While Movant argues that he is entitled to an evidentiary hearing on this issue nothing he has asserted is based in any fact present in the record or present in his §2255 pleadings other than his unsubstantiated beliefs. Without more, the Court is not required to hold an evidentiary hearing. *See Hester v. United States*, 335 Fed. Appx. 949 (11th Cir. 2009)("Because Hester's claim of

prejudice-even liberally construed-is unsupported on the face of the record, the district court did not abuse its discretion by failing to hold an evidentiary hearing."). The Court adopts the R&R.

### v. Constructive amendment of the indictment at trial.

Movant maintained that because the Government put forth testimony that he had placed the money in the trunk of his car thereby concealing the location of the money, they constructively amended the indictment. Since the Government had never alleged that Movant concealed the location of the money, he argues that to put forth this testimony at trial constructively amended the indictment. [DE 1 at 22].

Judge White found that a "review of the record confirms that the facts adduced at trial do not differ from those charged in the indictment." [DE 49 at 130]. He further found that "no showing has been made that [Movant] was convicted of uncharged conduct as it relates to the offenses of conviction, nor has he established a constructive amendment or variance in this case." [*Id.*].

Movant's objection is merely a repetition of the argument made in his §2255 pleadings. This argument was reviewed and rejected by Judge White. The Court has conducted a *de novo* review and adopts Judge White's recommendation. Movant has not met the standard required to establish that the indictment was constructively amended because the possible bases for conviction beyond that contained in the indictment were not broadened by the Government. *See United States v. Prince*, 883 F.2d 953, 959 (11th Cir. 1989).

### vi. Judicial bias.

Movant claimed that because the undersigned was biased and partial to the Government that the integrity of the trial proceedings were affected. [DE 1 at 22]. Movant asserted that the

undersigned was privy to ex-parte information prior to the indictment and concealed that fact from counsel. [*Id.* at 23].

Judge White found that Movant could not prevail on this claim "[a]bsent a showing of bias." [DE 49 at 131]. Movant counters that this is an incorrect standard and that he only need show a mere probability of bias or an appearance of impropriety. *See* [DE 56 at 78]. Assuming Movant is correct regarding the standard, he has not shown either a mere probability or the appearance of impropriety.

> A judge "shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned," 28 U.S.C. § 455(a), or "[w]here [s]he has a personal bias or prejudice concerning a party," 28 U.S.C. § 455(b)(1). We determine whether a judge should recuse herself, based on the appearance of impropriety, under § 455(a), by "whether 'an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality.' " *Berger*, 375 F.3d at 1227 (internal citation omitted). We have stated that "a judge should recuse [her]self under § 455(b) when any of the specific circumstances set forth in that subsection exist, which show the fact of partiality," and where such circumstances exist, "[r]ecusal is mandatory, because 'the potential for conflicts of interest are readily apparent.' " *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir.2003). A defendant may not waive a ground for disqualification enumerated in subsection (b), but "[w]here the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification." *Id.* at 1322 (citing 28 U.S.C. § 455(e)).

> "Bias sufficient to disqualify a judge under section 455(a) and section 455(b)(1) must stem from extrajudicial sources, unless the judge's acts demonstrate such pervasive bias and prejudice that it unfairly prejudices one of the parties." *United States v. Bailey*, 175 F.3d 966, 968 (11th Cir.1999) (internal quotation omitted). Applying the "extrajudicial source" standard, the Supreme Court has held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," nor do "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases." *Liteky v. United States*, 510 U.S. 540, 555-56, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). The Court stated that judicial remarks "may" support a bias or partiality

challenge "if they reveal an opinion that derives from an extrajudicial source; and will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* However, "[n]ot establishing bias or partiality ... are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Id.*

*United States v. Marrero*, 219 Fed. Appx. 892, 894-95 (11th Cir. 2007). The Court has previously reviewed and rejected this claim on multiple occasions. Nothing that Movant asserts here has changed the undersigned's conclusion that her impartiality would not reasonably be questioned nor was she biased or prejudiced against the Movant. This claim is again denied. The Court adopts the R&R.

### vii. Refusal to grant severance of Count 2 denied Movant his due process.

Movant asserted that Counts 1 and 4 of the indictment were unrelated to Count 2 and should have been severed. [DE 1 at 23]. At trial, counsel for Movant filed motions to sever counts which were "unrelated" and Movant argued that the Court erred in its denial and violated Rules 8 and 14 of the Federal Rules of Criminal Procedure. [DE 1 at 61]. These motion were denied. Here, Movant contends that had the counts been severed he could have testified in his own defense as to Count 2 but, doing so, without severance would have resulted in presenting inconsistent defenses as to Counts 1 and 4. Therefore, Movant maintained that his due process rights were violated because he could not testify as to Count 2 for fear of sabotaging his defense of Courts 1 and 4. As a result of the Court's denial of his motions to sever, Mr. Elso claimed prejudice.

Judge White denied this claim because motions to sever are at the sound discretion of the trial judge. [DE 49 at 132]. Judge White concluded that denial of severance here was proper

50

because Rule 8(a) allows joinder of offenses against a single defendant that "are of the same or similar character" even if such offenses do not arise out of the same transaction. [*Id.* at 133]. Given the nature of the crimes, the charges alleged in the indictment are sufficiently related to Movant's criminal acts.

Movant objected to Judge White's conclusion "that [he] has not demonstrated that he has important testimony to give concerning some counts and a strong need to refrain from testifying as to others." [DE 56 at 80]. Movant further objected to the R&R because Judge White took a "contradictory position and/or intentional misapprehension of the facts." [*Id.* at 81].

To begin, Judge White did not conclude as Movant asserts. The R&R clearly stated that Movant had not shown the elements required to justify a severance because he "merely claims he would have denied his involvement as to one count. However, as is evident from the defense at trial and from Movant's own allegations here, he has denied any involvement as to all charges." [DE 49 at 133].

This is a true statement. More importantly, this argument was not made when the motion was filed. Case No. 03-20272-SEITZ (DE 44). In his Motion to Sever, Movant did not allege that he would be deprived of putting forth a defense; rather he argued that the jury would be "inundated with allegations of multiple, unconnected crimes that will portray the Defendant in the worst imaginable light." (*Id.* at 6-7). Thus, Movant's current assertion that he intended to testify and but was precluded by the Court's failure to sever rings hollow. The Court adopts the R&R.

### viii. Trial judge violated Movant's right to a public trial.

At trial, Movant sought to have his young children attend the court proceedings. The

undersigned denied his request. Movant argued that he was denied his Sixth Amendment right to a public trial. [DE 1 at 24]. Movant maintains that "no party sought closure of the courtroom or requested that [Movant]'s children be excluded from attending the trial proceedings." [*Id.* at 63].

Judge White found that "[e]ven if the facts as alleged by [Movant] are true, [his] right to a public trial was not violated." [DE 49 at 135]. This is so because the United States Supreme Court in *Waller v. Georgia*, 467 U.S. 39 (1984) recognized that the right to a public trial is not absolute and in some instances must yield to other interest, in particular those essential to the administration of justice. [DE 49 at 134-35].

Movant objected and argued that Judge White misapplied and misapprehended the standard of review "with respect to the closure or partial closure of a courtroom." [DE 56 at 81]. Movant also argued that because both the undersigned and Judge White failed to conduct an evidentiary hearing, the findings were "flawed" and "inadequate." [*Id.* at 84]. Movant offers no explanation of what an evidentiary hearing would have accomplished in this instance.

To be clear, to the extent there was a closure of the courtroom, it was a partial closure. The only two persons limited from the courtroom were Movant's two minor children. Further, contrary to Movant's assertion, the Court did not *sua sponte* bar his children from the courtroom. The Government was the first party to bring to the Court's attention that Movant's children were in the building. [DE 48-17 at 6]. The Government then "quite vehemently" objected to Movant's children being in the courtroom. [*Id.* at 9]. To contend otherwise is simply untrue.

That being said, the Court expressly disallowed only Movant's two minor children from the courtroom during closing arguments because they could and likely would be disruptive. This was permissible. The right to a public trial is not absolute and must be balanced against other

interests essential to the administration of justice. Movant's remaining family members were present and allowed to attend all proceedings. Therefore, only a partial closure of the courtroom existed. The Eleventh Circuit has addressed the issue of partial disclosure by holding that "where a partial closure is involved, a court must look to the particular circumstances to see if the defendant still received the safeguards of the public trial guarantee." *See Douglas v. Wainwright*, 739 F.2d 531, 532 (11th Cir. 1984). To partially close the courtroom, the Court need only find a "substantial" rather than a "compelling" need for the closure. *Id.* at 533. Given that the only two persons excluded from the courtroom were Movant's twelve year old daughter and nine year old son but his remaining family members were present, along with anyone else from the public, his right to a public trial was not violated.[23] Therefore, he cannot prevail on his claim of a Sixth Amendment violation. The Court adopts the R&R.

### ix. Imposition of a mandatory guidelines sentence and the accompanying judicial fact finding.

Movant's final claim in his initial motion to vacate is that the undersigned "imposed a constitutionally invalid sentencing guideline scheme" resulting in a sentence being imposed "that exceeded that authorized by the jury's verdict." [DE 1 at 24]. In support, Movant claims that the undersigned imposed an illegal sentence when she enhanced his sentence for abuse of position of trust and obstructions of justice. [*Id.*].

Judge White found that this "is a mere reiteration of the arguments raised previously in

---

[23] It is noteworthy that as an accommodation to Movant, the Court offered to speak with the minor children and explain why they were being excluded. The undersigned also offered for the children to enter the courtroom outside the presence of the jury and when court was not in session so they could see the courtroom where the proceedings were taking place. [DE 48-17 at 6-15]. At that time, Movant's primary concern was not the guarantee of his right to a public trial but rather that his children have "closure." [*Id.* at 6].

this report, and should be denied for the reasons expressed therein." [DE 49 at 136]. Movant files no objection to this conclusion. *See* [DE 56 at 88]. The Court conducted a *de novo* review of the pleadings and agrees with Judge White. The Court adopts the R&R.

## CLAIM 5: CUELLAR V. UNITED STATES

On August 5, 2008, Movant filed an amended motion to vacate, set aside or correct sentence. [DE 21]. Movant argued that his conviction and sentence was imposed in violation of the Constitution of the United States as evidenced by the intervening change in the law, *Cuellar v. United States*, 553 U.S. 550 (2008). In *Cuellar*, the United States Supreme Court held that "merely hiding funds during transportation was not a violation of the statute and that the Government must prove that the transportation had the purpose of concealing the source or ownership of the funds." *Id.* at 568. The Supreme Court further interpreted the term "designed" to narrow § 1956's scope, holding that, in a prosecution for concealment money laundering, "how one moves the money is distinct from why one moves the money." *Id.* at 566. The Eleventh Circuit Court of Appeals has found "that *Cuellar* is retroactively applicable to cases on collateral review because it established a new substantive rule of criminal law." *Ortiz-Alvear v. United States*, 429 Fed. Appx. 955 (11th Cir. 2011).

Judge White found that Movant's case was "easily distinguishable from *Cuellar*" because Cuellar went to trial and the Government failed to present sufficient proof of Cuellar's knowledge that "the transportation was designed to conceal a listed attribute of funds." [DE 49 at 136]. However, Judge White found that in Movant's case, there was evidence adduced at trial that Movant knew the funds were derived from drug activities and belonged to other coconspirators.

Movant objected to this determination because the finding is "contradicted by the record" and Judge White focused on the wrong enumerated element when he assessed Movant's knowledge of the source of funds rather than the concealment of the funds. [DE 56 at 89]. Further, Movant asserted that Judge White made no analysis as to the sufficiency of evidence in light of *Cuellar*. [*Id.* at 92].

In *Cuellar*, the Supreme Court interpreted the term "designed" to narrow § 1956's scope. The Supreme Court held that merely hiding funds during transportation was not a violation of the statute and that the Government must prove that the transportation had the purpose of concealing the source or ownership of the funds. *Id.* at 568, 128 S.Ct. 1994. Putting aside Movant's objections, a plain reading of *Cuellar* would reject Movant's claim.

Mr. Cuellar was transporting the funds in a secretive way but not necessarily because secrecy was the purpose of the transportation. Mr. Cuellar was transporting the funds hidden in a secret compartment in his car so that the funds would cross the border into Mexico and drug smugglers would get their cut of the profits. However, the Government failed to introduce any evidence that the reason drug smugglers move money to Mexico is to conceal or disguise a listed attribute of the funds. Rather, the purpose of the transportation was the compensation of the leaders of the drug organization in Mexico. The Court in *Cuellar* clarified the relevant issue as: "*how* one moves the money is distinct from *why* one moves the money. Evidence of the former, standing alone, is not sufficient to prove the latter." *Id.* at 566. (emphasis added).

Here, there was sufficient evidence that Movant's intent in moving the money from Mr. Diaz's home was to conceal the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity. The Court recognizes that Movant disagrees with

this factual determination and continues to assert that the funds "rescued" were legitimate attorney's fees but that argument has been repeatedly rejected not only by this Court and the Court of Appeals, but also by a jury of Movant's peers. Moreover, the Government need only present sufficient evidence to permit a reasonable jury to conclude beyond a reasonable doubt that Movant's transportation was "designed in whole or in part ... to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds." §1956(a)(2)(B)(i). The Government did so. The Court adopts the R&R.

### CLAIM 6: STAY OF MANDATE

On September 28, 2009, Movant filed a second motion to vacate, set aside or correct sentence. [DE 21]. On appeal, counsel did challenge the sufficiency of the indictment as to Count 4. However, counsel did not petition the Eleventh Circuit Court of Appeals to stay the issuance of the mandate. In his second motion to vacate, Movant argued that this failure deprived him of "the right to timely challenge the defective indictment in the district court and/or his ability to litigate a direct appeal." [*Id.* at 2].

Judge White determined that because Movant's "argument regarding the fatal defect to Count 4 has been found to be meritless," he cannot establish prejudice arising from counsel's failure to file a motion to stay the mandate. [DE 49 at 139]. As Movant's challenge to the Court's jurisdiction was untimely and waived pursuant to Fed.R.Cr.P. 12(b)(3) and was meritless, then he failed to satisfy *Strickland*. [*Id.*].

Movant made numerous generalized objections regarding Judge White's conclusions which are simply restatements of his claim made in his §2255 motion and Reply. However, Movant also objected to the R&R because he argued that Judge White made a *Clisby* error by

failing to make factual finding as to his actual innocence claim. Movant is wrong.

In *Clisby*, the Eleventh Circuit instructed district courts to resolve all claims for relief raised in a petition for writ of habeas corpus prior to granting or denying relief. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir.1992) (en banc) (involving state prisoner's 28 U.S .C. § 2254 petition); *see Rhode v. United States*, 583 F.3d 1289, 1291 (11th Cir. 2009) (applying *Clisby* to a federal prisoner's § 2255 motion). However, Judge White did address Movant's claim of actual innocence and found that he "also failed to establish actual innocence in light of *Cuellar*." [DE 49 at 137, n.7]. While Movant may not agree with the resolution, the claim was addressed and rejected by Judge White. After a *de novo* review and in accordance with the previous denials of the underlying substantive claims, the Court adopts the R&R.

## *CERTIFICATE OF APPEALABILITY*

Finally, the Court will grant a limited certificate of appealability as to whether Movant was entitled to an evidentiary hearing as to the specific subsections of Claim 2(iii) regarding counsel's failure to call Kimberley Simms as an alibi witness and failure to introduce travel documents and passport. In order to obtain a certificate of appealability, Movant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is satisfied if Petitioner demonstrates "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Jones v. Secretary*, 607 F.3d 1346, 1349 (11th Cir. 2010) (quotation omitted); *see Lott v. Attorney Gen.*, 594 F.3d 1296, 1301 (11th Cir. 2010). Here, the Court must grant a limited certificate of appealability because Movant has not met this standard as to the remainder of his claims.

## CONCLUSION

Movant has raised every conceivable issue in his Motion to Vacate and his objections to the Report and Recommendation. Judge White and the undersigned have carefully reviewed all of Movant's claims and objections. Additionally, Chief Judge Moreno has considered the denials of the motions to recuse the undersigned. Accordingly, for the reasons discussed, it is

**ORDERED THAT**

(1) Movant's objections to the Report and Recommendation [DE 56] are OVERRULED.

(2) The Report of Magistrate Judge [DE 49] is hereby ADOPTED, AFFIRMED, and RATIFIED, as discussed above, and made an Order of this Court.

(3) Movant's Motion to Vacate Under 28 U.S.C. §2255 [DE 1, DE 13, DE 21] is DENIED.

(4) Movant is granted a limited certificate of appealability as to his entitlement to an evidentiary hearing on part of his ineffective assistance of counsel sub-claims (Claim 2(iii)) for failing to call Kimberley Simms as an alibi witness and failing to introduce travel documents and passport.

(5) Other pending motions or objections are DENIED.

(6) This CASE is CLOSED.

**DONE AND ORDERED** in Miami, Florida, this 24th day of May, 2012.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:    Honorable Patrick A. White
Counsel of Record/*Pro Se* Parties